**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Greenbelt Resources Corporation,                          Civil No. 07-4103 (DWF/SRN)
f/k/a Originally New York, Inc., a
Nevada corporation,

                    Plaintiff,

v.                                                                        **MEMORANDUM
                                                                    OPINION AND ORDER**

Redwood Consultants, LLC, a
California limited liability company,
U.S. Sustainable Energy Corporation,
and John Rivera, individually and in
his capacity as Chairman and Chief
Executive Officer of U.S. Sustainable
Energy Corporation,

                    Defendants.

_____

Robert M. Gardner, Esq., Gardner Law Office, counsel for Plaintiff.

Keiko L. Sugisaka, Esq., and Alain M. Baudry, Esq., Maslon, Edelman, Borman &
Brand, LLP, counsel for Defendant Redwood Consultants, LLC.

Larry D. Espel, Esq., Green Espel, PLLP, counsel for Defendants U.S. Sustainable
Energy Corporation and John Rivera.

_____


**INTRODUCTION**

        The above-entitled matter is before the Court pursuant to Motions to Dismiss filed

by Defendants Redwood Consultants, LLC ("Redwood"), U.S. Sustainable Energy

Corporation ("USSEC"), and John Rivera ("Rivera").  For the reasons set forth below, the

Court grants the motions.

## BACKGROUND

Plaintiff Greenbelt Resources Corporation ("Greenbelt"), formerly known as

Originally New York, Inc. ("ONYI"), is a publicly traded Nevada corporation with its

principal place of business located in Burnsville, Minnesota.[1]  Greenbelt's wholly-owned

subsidiary, Diversified Ethanol Corporation ("Diversified"), manufactures scale sized

ethanol plants.

Redwood is a California limited liability company that provides investor relations

services for emerging, publicly traded companies.  Redwood acts as the investor relations

contact for USSEC, a publicly traded Nevada corporation with its corporate headquarters

in Port Gibson, Mississippi.  According to Greenbelt, USSEC purports to possess a

process for creating liquid biofuel.  Rivera is the Chairman and Chief Executive Officer

of USSEC.  Rivera is alleged to be a resident of Mississippi or Texas.

According to Greenbelt's Amended Complaint, in or around December 2006,

Rivera contacted Taylor Moffitt ("Moffitt"), an Iowa resident and the Chief Executive

Officer of ONYI, to discuss purchasing one of Diversified's ethanol plants.  Moffitt

---

[1]      Greenbelt's Complaint filed on September 27, 2007, alleged that its principal place
of business was in Eagle Grove, Iowa.  (Compl. ¶ 2.)  Greenbelt subsequently filed an
Amended Complaint on April 21, 2008, alleging that its principal place of business was in
Minnesota.  (Am. Compl. ¶ 2.)  At the hearing on this matter, Greenbelt's counsel
represented that Greenbelt moved its principal place of business to Minnesota between

(Footnote Continued on Next Page)

initially dismissed USSEC as an "unlikely customer," but thereafter Moffitt and Vint

Lewis ("Lewis"), a Minnesota resident, drove from Iowa to Mississippi to meet with

Rivera and visit USSEC's facility.  (Am. Compl. ¶ 36.)  Greenbelt alleges that, during this

visit, Rivera made various statements to induce ONYI to enter into a merger with

USSEC.  Greenbelt alleges that Rivera attempted to "curry credibility" with Moffitt and

Lewis by discussing his charitable deeds and his desire to defeat the "Seven Sisters of Big

Oil," while helping farmers and creating jobs.  (*Id*. ¶ 40.)  Greenbelt further alleges that

Rivera stated that the U.S. Air Force used jet fuel Rivera produced, and that Rivera

possessed documentation showing that the U.S. Air Force was legally required to

purchase electricity from him.  Greenbelt maintains that Rivera claimed USSEC would

end dependence on foreign oil, that USSEC would dominate the industry after it

bankrupted and bought out its competitors, and that, as a result of the technology Rivera

possessed, attempts had been made to kill him and that he needed armed guards for

protection.  Greenbelt alleges that Kelmer Smith, an associate of Rivera, took Moffitt and

Lewis on a tour of USSEC's facility, indicating to them that "everything in sight was

owned 'debt-free.'"  (*Id*. ¶ 47.)  According to Greenbelt, Rivera also represented that

USSEC owned 150 acres of land in Vidalia, Louisiana for expansion.

Later that day, Moffitt and Lewis visited Rivera's home.  Greenbelt alleges that,

during their visit to Rivera's home, Rivera represented that British Petroleum ("BP")

---

(Footnote Continued From Previous Page)
June and October 2007.

offered to buy Rivera's technology for $9 billion, but that he declined the offer in order to prevent BP from "snuff[ing] out his technology to prolong the foothold of big oil." (*Id.* ¶ 52.)  Greenbelt alleges Rivera represented that Cargill had offered him the same amount, but that he declined because "they are French and he is too patriotic and, as a former Marine, wanted to keep this for America." (*Id.*)  Greenbelt contends Rivera inquired about ONYI's stock and indicated that he wanted to buy out ONYI.  Greenbelt alleges that, notwithstanding that Rivera had prevented Moffitt from discussing Diversified's ethanol plants during this visit, "Moffitt and Lewis returned to Iowa very pleased with the meeting, concluding that at a minimum, Rivera/USSEC would be purchasing some of Diversified's ethanol plants." (*Id.* ¶ 53.)

Greenbelt alleges that on December 21, 2006, Rivera traveled to ONYI's headquarters in Iowa, flying most of the way to Iowa on a chartered plane for which Redwood had arranged.  Greenbelt maintains that, while in Iowa, Rivera toured ONYI's facility and ethanol plant, but appeared uninterested and instead asked about ONYI's stock and proposed a merger between USSEC and ONYI.  Greenbelt alleges that Rivera claimed that, as a result of the proposed merger, Diversified would build all of USSEC's ethanol plants, and eventually, would build the largest ethanol plant in the world.

Greenbelt claims that, after some discussion, the group agreed to move forward with a merger.  On December 22, 2006, Rivera and Moffitt signed a Memorandum of Understanding ("MOU") on behalf of USSEC and ONYI, the purpose of which was to outline the companies' intent to merge via a stock and asset swap.  Greenbelt alleges that

4

Rivera indicated that he would send an accountant to Iowa to obtain ONYI's financial records.  According to Greenbelt, also on December 22, 2006, Jens Dalsgaard ("Dalsgaard"), an employee of Redwood, contacted Lewis "to discuss the status of matters" and provided Lewis with his contact information.  (*Id.* ¶ 61.)

Greenbelt alleges that on December 28, 2006, Rivera sent Lewis a spreadsheet Rivera prepared that included a "Financial Results Summary."  According to Greenbelt, the summary represented that millions of dollars in profits would be made through the merger.  Greenbelt contends that Dalsgaard circulated two press releases.  The first press release, circulated on January 4, 2007, stated, "Diversified Ethanol A Division of Originally New York, Inc. Closing In On $12 Billion Acquisition To Become Market Leader In Ethanol Production – Combined Companies To Produce Ethanol at 60% Discounts To Any Other Technology In The World."  (*Id.* ¶ 69.)  The press release also stated that, "[w]e believe this technology has an immediate market value of between 9 and 12 billion dollars.  In light of these facts, if our combined companies were to eventually have a billion shares outstanding, the intrinsic value of our company stock would be $12 per share, other growth catalysts not considered."  (*Id.*)  On January 5, 2007, Dalsgaard circulated a second draft press release to Lewis and Rivera, to be issued by USSEC, entitled "U.S. Sustainable Energy Corp. And Diversified Ethanol, Inc. Sign Memorandum Of Understanding To Join Forces To Enter Multi Billion Dollar Ethanol Market."  (*Id.* ¶ 70.)

According to Greenbelt, on February 2, 2007, ONYI changed its name, at USSEC

and Rivera's insistence, to United Ethanol Group, Inc. ("United Ethanol"), and named

Rivera as Chairman of the Board of Directors.  On February 27 and March 7, 2007,

United Ethanol and USSEC signed an agreement, to be effective February 21, 2007, in

furtherance of the merger (the "Acquisition Agreement").[2]  Greenbelt alleges that,

following the execution of the Acquisition Agreement, Rivera insisted that Diversified's

$800,000 ethanol plant be disassembled and moved from Iowa to Mississippi.  Greenbelt

further alleges that on March 29, 2007, "having absconded with Diversified's ethanol

plant to Mississippi," USSEC terminated its agreement with ONYI and Rivera resigned

from ONYI's board.  (*Id.* ¶ 77.)  Greenbelt maintains its attempts to obtain the return of

its financial records and ethanol plant, or compensation for the plant, were unsuccessful.

Greenbelt asserts claims of conversion of property, unjust enrichment, intentional

misrepresentation and civil conspiracy.[3]  Greenbelt alleges that Redwood, USSEC and

Rivera conspired to mislead Greenbelt, through Rivera's representations and the

---

[2]     Greenbelt alleges that this agreement was entitled "Technology Licensing and
Acquisition Agreement."  (Am. Compl. ¶ 74.)  Redwood submitted a copy of an
agreement called the "Distribution and Acquisition Agreement," and Redwood indicated
that this was the agreement signed by USSEC and Rivera.  (Aff. of Keiko Sugisaka
("Sugisaka Aff.") ¶ 2, Ex. A.)  The copy of the agreement filed by Redwood is
unexecuted.

[3]     Greenbelt's Complaint filed September 27, 2007, also asserted claims under the
Racketeer Influenced and Corrupt Organizations Act ("RICO") and of RICO civil
conspiracy.  (Compl. ¶¶ 68-90.)  In its Amended Complaint, Greenbelt abandoned those
claims.

publication of "sham" press releases, into agreeing to enter into the MOU and Acquisition

Agreement, and to move its ethanol plant to Mississippi.[4]

Redwood moves this Court for an order dismissing Greenbelt's action for failure to

plead fraud claims with particularity, lack of personal jurisdiction, improper venue, and

failure to state a claim upon which relief may be granted.  Redwood's motion is made

pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), 12(b)(3) and 12(b)(6).

USSEC and Rivera also move this Court for an order of dismissal pursuant to Federal

Rules of Civil Procedure 12(b)(2) and 12(b)(3), on the basis that this Court lacks personal

jurisdiction over USSEC and Rivera and improper venue.  USSEC and Rivera further cite

28 U.S.C. §§ 1404 and 1406, concerning a district court's power to transfer a case to

another court, though USSEC and Rivera do not explicitly request such a transfer.

## DISCUSSION

### I.      Motions to Dismiss for Lack of Personal Jurisdiction

Redwood, USSEC and Rivera assert that the Court should dismiss all claims

against them because the Court lacks personal jurisdiction over them.

#### A.      Standard and Requirements for Establishing Personal Jurisdiction

When personal jurisdiction has been challenged, the plaintiff has the burden to

---

4      USSEC filed an Answer to Greenbelt's Complaint on December 26, 2007, and an
Amended Answer and Counterclaim on March 6, 2008, in which it denied many of the
allegations in the Complaint.  Redwood and Rivera did not file an answer.  Greenbelt's
Amended Complaint was filed on April 21, 2008.  None of the Defendants have answered
the Amended Complaint.

show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97

F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575

(8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction,

however, the plaintiff need only make a prima facie showing of personal jurisdiction over

the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519,

522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas*

*Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider

matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the

facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land*

*v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the

plaintiff has made a prima facie showing of personal jurisdiction, the court must view the

evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the

plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota*

*Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident

defendant, a court must ordinarily satisfy both the requirements of the state long-arm

statute and of federal due process. *See id.* (citing *Northrup King*, 51 F.3d at 1387). The

Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due

process, and therefore a court in Minnesota need only evaluate whether the requirements

of due process are satisfied. *Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc.*, 65

F.3d 1427, 1431 (8th Cir. 1995).  When analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards.  *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether the defendants' contacts with the forum state establish personal jurisdiction.  *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003).  In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose.  *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418–19 (1984)); *Valspar*, 495 N.W.2d at 411.  Specific jurisdiction, on the other hand, requires that the defendant

9

has "purposely directed" its activities at residents of the forum and that the litigation

results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65

F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in

determining whether the exercise of personal jurisdiction would pass constitutional

muster:  (1) the nature and quality of defendant's contacts with the forum state; (2) the

quantity of contacts; (3) the source and connection of the cause of action with those

contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the

convenience of the parties. *See Wessels*, 65 F.3d at 1432.  The first three factors are of

primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg.*

*Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995).  The third factor

distinguishes between specific and general jurisdiction. *See Digi-Tel*, 89 F.3d at 523 n.4

(citing *Wessels*, 65 F.3d at 1432, n.4).

**B.** **Whether Greenbelt Has Made a Prima Facie Showing of Personal**
**Jurisdiction**

Redwood, USSEC and Rivera argue that their contacts with the State of Minnesota

are insufficient to permit the exercise of personal jurisdiction over them by a Minnesota

court.  The Defendants assert that they have not maintained continuous and systematic

contacts with Minnesota, and therefore that general jurisdiction over them does not exist.

Defendants also assert that no connection exists between the transaction at issue in this

case and the State of Minnesota, and therefore, that the standards for exercising specific

jurisdiction over them are not satisfied.

### 1.    Personal Jurisdiction over Redwood

Redwood notes that it is a California business entity and that it has no offices,

employees, registered agent, bank accounts, financial holdings, or real or personal

property in Minnesota.  (Aff. of Jens Dalsgaard ("Dalsgaard Aff.") ¶ 3.)  The record

reflects that Redwood's contacts with Minnesota were limited to providing investor

relations services to a Minneapolis-based client in 2001, and a company called GelStat.

(Aff. of Robert M. Gardner ("Gardner Aff.") ¶¶ 2-3, Ex. 1.)  GelStat was originally

incorporated in Minnesota and maintains a Minnesota registered address, but closed its

Minnesota operations in 2006 during a reorganization, and GelStat no longer has any

employees, officers, directors, operational offices or property in Minnesota.  (Decl. of

William R. Colucci ("Colucci Decl.") ¶¶ 3-4.)  Redwood provided services to GelStat in

2006, consisting of answering 6 to 12 investor inquiries and organizing an investor

conference. (Supp. Aff. of Jens Dalsgaard ("Dalsgaard Supp. Aff.") ¶ 2.)  Redwood's

Dalsgaard states that, until this lawsuit, he was unaware of GelStat's connection to

Minnesota and that Redwood performed no work in Minnesota for GelStat.  (Dalsgaard

Supp. Aff. ¶ 3.)

Redwood maintains that none of the events giving rise to Greenbelt's claims

occurred in Minnesota.  Redwood argues that the only possible Minnesota connection to

the case is the involvement of Lewis, alleged to be a Minnesota resident.  Redwood

argues that Greenbelt's allegations that Dalsgaard made a telephone call and circulated

draft press releases to Lewis do not confer personal jurisdiction over Redwood.

Greenbelt asserts that Redwood's business relationships with its two Minnesota clients are sufficient contacts for the exercise of general jurisdiction. This Court disagrees. Redwood's contacts with Minnesota are not continuous and systematic. Redwood does not maintain a business presence in Minnesota, and its two contracts with Minnesota companies are insufficient to confer general jurisdiction. Both contracts contemplated only one-year arrangements and both have been completed. The first contract was completed in 2001 or 2002, long before the events related to this transaction took place. With respect to the contract with GelStat, Redwood was not aware GelStat was incorporated in Minnesota and Redwood's limited work for GelStat was not performed in Minnesota. Redwood's staff never traveled to Minnesota in connection with these contracts. The record does not reflect that Redwood purposefully availed itself of the privileges of conducting business in Minnesota such that it could reasonably anticipate being haled into a court in Minnesota for any purpose. *See Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (business contacts "involving some collaboration with a Minnesota resident on one project and a publishing relationship with a Minnesota company" held insufficient to subject defendant to general jurisdiction).

Greenbelt also argues that Redwood's contacts with Lewis via telephone and electronic mail in connection with the agreements between Greenbelt and USSEC provide a basis for this Court to exercise specific personal jurisdiction over Redwood. Letters, e-mails, faxes and telephone contacts may, in conjunction with other contacts, support the

exercise of personal jurisdiction, but such contacts alone are insufficient to satisfy due

process. *Northrup King*, 51 F.3d at 1388; *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677

F.2d 651, 656 (8th Cir. 1982). Here, the electronic mail messages and telephone calls to

Lewis do not satisfy due process because they stand alone as the only contacts Redwood

made with Minnesota in connection with this transaction.

Further, Greenbelt has not shown that Redwood "purposely directed" its activities

at a resident of Minnesota. Redwood's contacts with Lewis occurred in connection with

an agreement entered into by Lewis's employer, a Nevada corporation with its principal

place of business in Iowa. Greenbelt did not show that Redwood knew Lewis was a

Minnesota resident. Greenbelt also failed to produce any evidence that Lewis actually

received the telephone call and electronic mail messages in Minnesota. As Redwood

pointed out, in this age of advanced telecommunications technology, Lewis could have

been outside Minnesota when he received these contacts. This Court finds that there is no

basis to exercise specific personal jurisdiction over Redwood.

### 2.    Personal Jurisdiction over USSEC and Rivera

Greenbelt argues this Court may exercise jurisdiction over USSEC and Rivera

alleging that USSEC and Rivera "conduct business throughout the United States

(including Minnesota)." (Am. Compl. ¶¶ 4-5.) Greenbelt also contends that USSEC and

Rivera are subject to this Court's exercise of specific jurisdiction as a result of USSEC's

Internet website, www.ussec.us. Greenbelt alleges that its cause of action arises from its

use of the website because USSEC and Rivera used USSEC's website to intentionally

publish misleading press releases and Greenbelt relied on these press releases in deciding

to enter into its agreement with USSEC.

USSEC and Rivera contest Greenbelt's allegations that they conduct business in

Minnesota.  When allegations in a plaintiff's complaint are contested, reliance on

conclusory allegations is insufficient and additional proof is required.  *Dever v. Hentzen*

*Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004); *see also Woodcock*, 444 F.3d at 956

(conclusory allegations did not satisfy plaintiff's burden to establish a prima facie case

regarding jurisdiction.)  The record reflects that USSEC is headquartered in Mississippi

and is moving its headquarters to Texas; that USSEC does not have business operations,

facilities, or offices in Minnesota; and that USSEC does not do business in Minnesota.

(Aff. of John Rivera ("Rivera Aff.") ¶¶ 3-5, 7.)  Rivera maintains that he is a resident of

Mississippi, and that he has never visited Minnesota for personal matters or in connection

with the business of USSEC.  (*Id*. ¶¶ 1, 6.)  USSEC and Rivera also contend that all

meetings and conversations related to the transaction at issue occurred in Mississippi and

Iowa, and Rivera indicates he was unaware that any contacts in this transaction involved

any person in or from Minnesota.  (*Id*. ¶ 9.)  Greenbelt has failed to produce evidence

showing that USSEC and Rivera have a history of doing business in Minnesota, or with

Minnesota entities or citizens.  This Court may not exercise general personal jurisdiction

over USSEC and Rivera.

Greenbelt's reliance on USSEC's website to establish specific jurisdiction over

USSEC and Rivera is also unpersuasive.  The Eighth Circuit has adopted a "sliding scale"

approach to determining the existence of specific jurisdiction based upon a website.

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-711 (8th Cir. 2003); *see also Zippo Mfg.*

*Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (articulating the

sliding scale approach).  In this analysis, three different types of websites are identified.

The first are active websites, through which businesses clearly do business over the

Internet and enter into contracts with residents of foreign jurisdictions involving the

knowing and repeated transmission of computer files over the internet, and where the

exercise of personal jurisdiction by the foreign jurisdiction is proper.  *Lakin*, 348 F.3d at

710 (citing *Zippo*, 952 F. Supp. at 1124).  Passive websites are those upon which a

defendant has posted information accessible to interested users in foreign jurisdictions

and are not grounds for the exercise of personal jurisdiction.  *Id.* at 710-711.  A third

category is comprised of middle ground, interactive websites, though which a user may

exchange information with a host computer.  *Id.* at 711.  An inquiry involving a middle

ground website must examine the level of interactivity and the commercial nature of the

exchange of information using the site.  *Id.*

Greenbelt argues that USSEC's website is an active or middle ground website

because a viewer may contact USSEC and Redwood via the website.  The Court viewed

USSEC's website, and finds that the website provides information to interested users via

press releases and videos, though a visitor to the website may also use the website to send

an electronic mail message to USSEC or its media contact, and may fill out and submit an

electronic form to contact or request information from Redwood.  The Court finds that the

website, as currently structured, is properly categorized as a passive website.  The website

does not allow an exchange with a host computer, and it does not appear that products

may be purchased or contracts entered into via the website.

In addition, Greenbelt alleges it used the website to view press releases, indicating

that the website functioned passively relative to the transaction at issue in this case.  A

user in any jurisdiction could view USSEC's press releases and contact the company, but

a defendant should not be subject to jurisdiction in every forum in which its website is

accessible.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th

Cir. 2002) ("If we were to conclude as a general principle that a person's act of placing

information on the Internet subjects that person to personal jurisdiction in each State in

which the information is accessed, then the defense of personal jurisdiction, in the sense

that a State has geographically limited judicial power, would no longer exist").  Further,

even if Greenbelt could show that USSEC's website had a higher level of interactivity, at

the time of the transaction, Greenbelt's principal place of business and substantial asset

was in Iowa, and its cause of action would arise from USSEC's connection to Greenbelt

in Iowa, not to Minnesota.  This Court finds it cannot exercise specific jurisdiction over

USSEC and Rivera.

### 3.     Greenbelt's Request for Jurisdictional Discovery

Greenbelt requests that it be allowed to conduct jurisdictional discovery to explore

whether Redwood may have any additional contacts with Minnesota, as well as to find

out more information related to USSEC's website.  The Eighth Circuit recently held that

16

jurisdictional discovery should be permitted where the plaintiff offered "documentary evidence, and not merely speculations or conclusory allegations," regarding the defendant's contacts with the forum state. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008). In *Lakin*, the court remanded to allow jurisdictional discovery regarding personal jurisdiction where the plaintiff showed that the defendant maintained home equity loans and lines of credit amounting to $10 million in credit for Missouri customers. 348 F.3d at 708. The discovery was targeted toward determining the number of consumers in Missouri who had accessed the defendant's website to obtain loans and the substance of those contacts, and the number of liens on property in Missouri securing the loans. *Id.* at 710, 712. Conversely, in *Dever*, the court rejected the argument that jurisdictional discovery should have been allowed where the plaintiff failed to rebut the defendants' assertions against jurisdiction and offered only conclusory allegations to support his claim that personal jurisdiction existed. 380 F.3d 1070, 1074 n.1 (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."))

Greenbelt has, for the most part, offered only conclusory allegations that Defendants conduct business in Minnesota. Unlike the circumstances in *Lakin*, Greenbelt's request for jurisdictional discovery is not specifically targeted to flesh out connections already shown to exist, but instead is more akin to a fishing expedition in which a plaintiff intends to cast a wide net for potential contacts with a forum state. The

Court finds that jurisdictional discovery is not appropriate in this case.

## II.     Redwood's Motion to Dismiss for Failure to State a Claim

Redwood urges this Court to find that Greenbelt's Amended Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Redwood argues that Greenbelt has failed to allege sufficient facts to show that Redwood made intentional misrepresentations to Greenbelt, or that it engaged in a conspiracy to do so.  Redwood also notes that it is a small company and that litigating against Greenbelt in any jurisdiction will be financially burdensome.  Redwood's argument is persuasive, especially as so few of the allegations in Greenbelt's complaint relate to Redwood.  While the Court sympathizes with Redwood's circumstances, the Court declines to decide issues relating to the factual allegations of Greenbelt's suit in light of its finding that personal jurisdiction is absent in this case.[5]

## III.    Transfer of Venue

USSEC and Rivera cite 28 U.S.C. §§ 1404 and 1406, concerning a district court's power to transfer a case to another court.  USSEC and Rivera assert that Mississippi is the proper venue for this dispute, but do not explicitly request that this Court transfer venue to a court in Mississippi.  This Court declines to transfer venue.

Section 1404(a) states:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

---

5      The Court also declines to address Redwood's arguments pursuant to Federal Rule

(Footnote Continued on Next Page)

division where it might have been brought." Section 1406(a) states: "The district court

of a district in which is filed a case laying venue in the wrong division or district shall

dismiss, or if it be in the interest of justice, transfer such case to any district or division in

which it could have been brought."

It is possible that the parties' dispute could be litigated in Mississippi. In fact, an

action between Rivera, Greenbelt, Moffitt and Lewis is presently pending in Mississippi.[6]

In addition, the Acquisition Agreement contains a forum selection clause stating that:

> The Parties agree that all controversies, claims, disputes and matters
> in question arising out of, or related to, this Agreement, the breach of this
> Agreement, the purchase of the [sic] ONYI's securities pursuant to this
> Agreement or any other matter or claim whatsoever shall be decided by
> courts of competent jurisdiction in Adams County, Mississippi, to the
> exclusion of all other places of venue, for all matters that arise under this
> Agreement.

Notwithstanding the existence of a pending case in Mississippi and the forum

selection clause, it appears that the parties do not agree as to the proper forum for their

dispute. Based on Greenbelt's allegations, it is possible that there are several other states

that may provide a forum. This Court declines to select the forum for the parties by

---

(Footnote Continued From Previous Page)
of Civil Procedure 9(b) on the same basis.

6       Following the filing of Greenbelt's suit in this Court, Rivera filed an action in state
court in Mississippi against Greenbelt, Moffitt, and Lewis, which was removed to the
United States District Court for the Southern District of Mississippi. Moffitt, Lewis, and
ONYI moved to dismiss the action, or to transfer venue to this Court, under the "first to
file" rule; the court found the "first to file" rule applied, but ordered additional briefing
regarding the requests to dismiss or transfer venue. *Rivera v. Originally New York, Inc.*,
No. 5:07-CV-213(DCB)(JMR), 2008 WL 486585 (S.D. Miss. Feb. 19, 2008).

transferring venue to a court in Mississippi or any other state.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant Redwood's Motion to Dismiss (Doc. No. 7) is **GRANTED**.

2.      Defendants USSEC and Rivera's Motion to Dismiss (Doc. No. 30) is

**GRANTED**.

3.      Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITHOUT**

**PREJUDICE.**

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  May 28, 2008                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        Judge of United States District Court